UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARIANA JEFFERSON,**<br>    Plaintiff<br><br>v.<br><br><br>**GENERAL HEALTH SYSTEM AND BATON ROUGE GENERAL MEDICAL CENTER,**<br>    Defendants. | **CIVIL ACTION NO.:**<br><br><br><br>**JUDGE:**<br><br><br><br>**MAGISTRATE:** |

**COMPLAINT AND JURY DEMAND**

**I.  INTRODUCTION**

1. This is an unlawful employment practices case. The plaintiff brings this suit pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* ("FMLA"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981.

2. The FMLA protects employees who must take workplace leave for a serious health condition.

3. As alleged further below, the defendants interfered with, restrained, and/or denied the plaintiff's exercise of or the attempt to exercise her rights under the FMLA.

4. As alleged further below, the defendants discriminated and retaliated against the plaintiff because she took FMLA-protected leave.

5. The ADA makes it unlawful to intentionally discriminate against a qualified employee on the basis of the person's disability, having a record of a disability, or being regarded as having a disability.

6. As alleged further below, the defendants discriminated and retaliated against the plaintiff because of a disability, because she had a record of a disability, and/or because she was regarded as having a disability.

7. Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). It is likewise an unlawful employment practice to retaliate against an employee who opposes such a practice. See 42 U.S.C. § 2000e-3(a).

8. In addition, 42 U.S.C. § 1981(a) states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . ." An at-will employee stands in a contractual relationship with her employer and may maintain a cause of action for uncapped damages and other appropriate relief under Section 1981.[1]

9. As alleged further below, the defendants discriminated and retaliated against the plaintiff because of her race (African-American) and because she opposed racial disparities involving African-American employees at work.

## II. JURISDICTION

10. The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. § 1331 (federal question jurisdiction).

## III. VENUE

---

[1] See *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1050 (5th Cir. 1998).

11. The unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the Middle District of Louisiana. Venue, therefore, lies in the United States District Court for the Middle District of Louisiana under 42 U.S.C. § 2000e-5(f)(3). Venue is further proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in East Baton Rouge Parish, Louisiana.

## IV. PARTIES

12. Plaintiff Dariana Jefferson ("Plaintiff" or "Jefferson") is of the full age of majority and a resident of East Baton Rouge Parish, Louisiana.

13. At all material times, Plaintiff was an "eligible employee" under 29 U.S.C. § 2611(2), having (a) worked for at least 12 months for the defendants at the time that her need for FMLA-protected leave arose and (b) worked at least 1,250 hours of service for the defendants during the previous 12-month period.

14. At all material times, Plaintiff was a "qualified individual" under 42 U.S.C. §§12111(8) in that she was an individual who, with or without reasonable accommodation, could perform the essential functions of her employment position.

15. Plaintiff's race is African-American.

16. Defendant General Health System ("the System") is a Louisiana corporation domiciled in Baton Rouge, Louisiana. During the time periods relevant to this action, the System was an employer of Plaintiff within the meaning of 29 U.S.C. § 2611(4), 42 U.S.C. § 12111(5)(A), and 42 U.S.C. §§ 2000e(b).

17. Baton Rouge General Medical Center ("BRGMC") is a Louisiana corporation domiciled in Baton Rouge, Louisiana. BRGMC was an employer of Plaintiff within the meaning

of 29 U.S.C. § 2611(4), 42 U.S.C. § 12111(5)(A), and 42 U.S.C. §§ 2000e(b) at all times material to this action.

18. The System provides management, governance, and administrative services to its subsidiary, BRGMC.

19. The System and BRGMC share common management, including the Chief Executive Officer.

20. Plaintiff alleges that, at all times relevant to this lawsuit, the System and BRGMC were joint employers of Plaintiff in that they possessed the power to hire and fire Plaintiff, they possessed the right to supervise Plaintiff, they possessed the right to set Plaintiff's work schedule, they paid Plaintiff's salary, they withheld Plaintiff's taxes, they provided Plaintiff's benefits, and they set the terms and conditions of Plaintiff's employment.

21. Plaintiff alleges that, at all times relevant to this lawsuit, the System and BRGMC were integrated employers in that they were interrelated in their operations, shared centralized control of labor relations, shared common management, and were under common ownership and/or financial control.

22. The System and BRGMC are referred to collectively as "Defendants" or "the Employer."

### V. STATEMENTS OF FACTS

23. On or around August 2010, the Employer hired Plaintiff. Subsequently, the Employer promoted Plaintiff approximately four times, most recently to the position of Lab Support Services Supervisor. At the time of her termination, Plaintiff had worked for the Employer for over twelve (12) years.

4

24. Plaintiff worked at the Reference Laboratory at the Employer's Mid-City campus in Baton Rouge, Louisiana. In approximately March 2021, the Employer promoted Plaintiff to Lab Support Services Supervisor.

25. Plaintiff's supervisor was Sherry Dore, Director of Laboratory Services, ("Dore" or "Director Dore") who worked at the Employer's Picardy Avenue campus in Baton Rouge, Louisiana. On information and belief, Director Dore's race is White.

26. Plaintiff's counterpart at the Employer's Picardy campus laboratory was Pam Martin ("Martin" or "Manager Martin").

27. As of approximately July 2022, both Martin and Plaintiff reported directly to Dore.

28. On or around July 5, 2022, Plaintiff reported Director Dore's disparate treatment of African-American employees based on race to Anne Segura, Senior Director – Human Resources, ("Segura" or "HR Director Segura"). Segura told Plaintiff that Ramon Hardy, Manager – Employee Relations, ("Hardy" or "Employee Relations Manager Hardy") would follow up with Plaintiff.

29. Plaintiff met with Employee Relations Manager Hardy about her report to HR Director Segura concerning Director Dore's conduct toward African-Americans.

30. Plaintiff suffers from anxiety, a chronic condition that flares up, substantially limiting her ability to function in a variety of ways. For example, Plaintiff's anxiety causes her to have difficulty concentrating, communicating, interacting with others, focusing, and performing work and other tasks. In addition, Plaintiff's anxiety impacts the operation of major bodily functions, including but not limited to her neurological system. Plaintiff also suffers from attention-deficit/hyperactivity disorder ("ADHD"). Symptoms of ADHD include inattention, restlessness, and impulsivity. Associated impairments include cognitive and executive function

5

impairment. Plaintiff's anxiety and ADHD are disabilities under the ADA and a serious health condition under the FMLA.

31. In or around July 2022, Plaintiff requested FMLA leave, and her health care provider provided FMLA paperwork to the Employer.

32. Initially, Plaintiff requested FMLA leave from Friday July 15, 2022 to Monday August 22, 2022. The Employer granted the request.

33. In or around August 2022, Plaintiff requested a brief extension of her FMLA leave through Friday September 2, 2022, and her health care provider provided additional FMLA paperwork to the Employer. The Employer granted the requested extension.

34. On or around August 9, 2022, Plaintiff emailed Director Dore and Manager Martin requesting that they stop telling other employees that Plaintiff had suffered a nervous breakdown and that she might not return to work. These statements were false. Nevertheless, Dore and Martin engaged in gossip with subordinate employees about Plaintiff's supposed nervous breakdown and speculated about whether she would be returning from medical leave.

35. Plaintiff's return to work date was scheduled for Monday September 5, 2022.

36. On or around the morning of Friday September 2, 2022, Plaintiff timely forwarded additional FMLA paperwork to the Employer, consisting of her health care provider's release for her to return to work on September 5th and her request for intermittent FMLA leave going forward. Plaintiff emailed these documents to the Employer's Human Resources employee, Jessica Walker, Benefits and Leave of Absence Analyst ("Walker" or "HR Analyst Walker"), as well as to the Employer's Benefits Department. Neither the Employer nor Walker responded to this email.

37. On or around Monday, September 5, 2022, HR Analyst Walker emailed Plaintiff, falsely claiming that Plaintiff had failed to provide the Employer with her health care provider's

6

release to return to work. The Employer, through Walker's email, threatened Plaintiff with job termination.

38. On or around Monday, September 5, 2022, Plaintiff promptly responded in writing to HR Analyst Walker's email. Plaintiff explained that she had provided her work release and updated FMLA documents to Walker and the Benefits Department on Friday, September 2, 2022. She attached a screenshot of the September 2nd email. In addition, Plaintiff offered to hand-deliver the documents if Walker could not locate the email.

39. On or around Monday, September 5, 2022, HR Analyst Walker responded by email, asking Plaintiff to send the September 2nd email and its attachments, claiming that neither she (Walker) nor the Benefits Department received it.

40. On or around Monday, September 5, 2022, Plaintiff promptly re-sent her original September 2nd email to HR Analyst Walker and the Benefits Department.

41. On or around Monday, September 5, 2022, HR Analyst Walker emailed Plaintiff, stating that because her "release note includes restrictions, you [Plaintiff] are not able to return to work until your manager and your director confirm that we will be able to accommodate your restriction for 1 year." In addition, Walker wrote, "Please use regular GPT for any missing time starting 9/5/22 until we inform you about the accommodation of your restriction." On information and belief, GPT is a type of paid time off program that the Employer's employees accrue. Thus, the Employer prohibited Plaintiff from returning to work in her position and/or a substantially equivalent position.

42. On information and belief, the Employer, through Walker and/or others, engaged in a practice of interfering with Plaintiff's and other employees' rights to return to work following legally protected leave.

7

43. Plaintiff requested from the Employer and the Employer never provided the legally required written Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act.

44. On information and belief, the Employer, through Walker and/or others, engaged in a practice of withholding information required to be provided to Plaintiff and other employees and/or requested by employees in connection with their FMLA and/or ADA-related leave.

45. Plaintiff's medical restriction was to work no more than 40 hours per week and avoid overtime. The length of this restriction was one year.

46. During Plaintiff's employment, the Employer strongly discouraged the use of overtime. Plaintiff's work schedule typically did not exceed 40 hours per work week.

47. The restriction to work no more than 40 hours per week and avoid overtime was compatible with Plaintiff's regular work schedule.

48. While Plaintiff was out on FMLA leave, the Employer promoted Manager Martin over Plaintiff so that Plaintiff was to report directly to Martin and Martin was to report directly to Dore.

49. While Plaintiff was out on FMLA leave, the Employer took away Plaintiff's managerial duties, fired some of her employees, and had her other employees report to Manager Martin. Furthermore, the Employer changed Plaintiff's title from "Lab Support Services Supervisor" to "Support Services Reference Supervisor."

50. On or around Tuesday, September 6, 2022, the day after the email exchanges between HR Analyst Walker and Plaintiff regarding Plaintiff's return to work, Walker barred Plaintiff from checking her work email, stating she was still on FMLA leave and had not been approved to return to work.

51. When Plaintiff did not hear back from HR Analyst Walker or the Employer regarding her return to work, she contacted the U.S. Department of Labor, Wage and Hour Division, ("DOL") on or around September 7, 2022 to obtain guidance. The DOL told Plaintiff to send an email to the Employer requesting an update on her employment status.

52. Following DOL guidance, Plaintiff emailed Louis Champagne, Senior HR Management Consultant, ("Champagne" or "HR Consultant Champagne") and HR Director Segura on or around September 7, 2022, and requested to know why she had not been allowed to return to work and why it was taking so long to reach a decision on accommodating her work restriction. Plaintiff requested that the Employer let her know as soon as possible what her current employment status was. Neither Champagne nor Segura responded to this email.

53. On or around September 12, 2022, Plaintiff received an email from Director Dore regarding a meeting to discuss her return to work.

54. On or around September 13, 2022, Plaintiff met with Director Dore, Manager Martin, HR Analyst Walker, HR Consultant Champagne, and Employee Relations Manager Hardy regarding Plaintiff's return to work. At the meeting, Plaintiff was informed that the Employer did not want her to return to work with any restrictions and that the Employer would not accommodate her.

55. On or around September 13, 2022, HR Analyst Walker requested additional information on Plaintiff's restriction from her health care provider. In response to Walker's request, Plaintiff's health care provider explained that while Plaintiff should not work more than 40 hours per week, she could work a flexible schedule, including 12, 10, and 8-hour shifts.

56. The following day, on or around September 14, 2022, the Employer once again denied Plaintiff permission to return to work.

9

57. On or around September 14, 2022, HR Analyst Walker and Plaintiff discussed the latest denial of permission to return to work during a phone call. Walker told Plaintiff that the Employer would not give her the requested accommodation and suggested she return to FMLA leave to obtain more treatment for her disability. Plaintiff declined to return to FMLA leave and stated there should be no barrier to her returning to work.

58. On or around September 16, 2022, Plaintiff again contacted the DOL to report the Employer's conduct. A DOL representative stated he would contact the Employer. On information and belief, the DOL contacted the Employer and communicated with the Employer through its attorney.

59. On or around September 19, 2022, after Plaintiff contacted the DOL, the Employer abruptly reversed course. HR Analyst Walker emailed Plaintiff, approving her return to work, her restriction of working no more than 40 hours per week, and her intermittent FMLA leave request.

60. Plaintiff returned to work in the demoted "Support Services Reference Supervisor" position on or around the following day, Tuesday, September 20, 2022.

61. After Plaintiff returned to work, the Employer attempted to assign her to undesirable schedules at night.

62. On or around October 12, 2022, Plaintiff had an anxiety attack during a meeting with Director Dore, Manager Martin, and others at the Mid-City campus. Dore and Martin both witnessed Plaintiff's anxiety attack, and Plaintiff made them aware she was having an anxiety attack.

63. After Plaintiff returned to work, Director Dore began to misapply Plaintiff's intermittent FMLA time to exhaust it. Dore did this by altering Plaintiff's time records to show her as out on FMLA intermittent leave when Plaintiff was not on leave.

64. On or around October 14, 2022, Plaintiff emailed Director Dore and Manager Martin, stating that Dore was tampering with her time records and improperly reporting her as being out on her FMLA intermittent leave when she was not.

65. On or around October 14, 2022, Plaintiff also included HR Analyst Walker, HR Consultant Champagne, and HR Director Segura in an email that reported (1) Dore's manipulation of her intermittent FMLA time, and (2) the fact that Plaintiff had requested the required Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act from Walker and never received it. Plaintiff requested the notice again and suggested that Director Dore, Manager Martin, and she could use education regarding intermittent FMLA leave. Neither HR Analyst Walker, HR Consultant Champagne, nor HR Director Segura responded to this email. The Employer never supplied Plaintiff with the required notice.

66. On or around October 14, 2022, Plaintiff again emailed HR Consultant Champagne and HR Director Segura, forwarding them an explanation of intermittent FMLA leave previously emailed by HR Analyst Walker to Manager Martin and Plaintiff on or around October 4, 2022. Plaintiff asked Champagne and Segura to confirm whether Walker's depiction of how to apply intermittent FMLA leave was correct. Plaintiff further asked Champagne and Segura to provide her with additional guidance. Neither HR Consultant Champagne nor HR Director Segura responded to this email.

67. On Friday, October 28, 2022, Plaintiff reported Director Dore's tampering with her time and misuse of her intermittent FMLA leave to HR Consultant Champagne. Plaintiff also reported to Champagne that Director Dore had sent aggressive emails to her related to her FMLA leave. Plaintiff told HR Consultant Champagne that she was experiencing harassment and retaliation because of taking FMLA leave.

68. On or around Monday October 31, 2022, one business day later, the Employer terminated Plaintiff's employment. The reasons the Employer gave for termination are false and a pretext for retaliation.

69. The Employer replaced Plaintiff with a person or persons outside some or all of the protected classes.

70. On information and belief, the Employer does not adequately train and manage its supervisors, managers, and Human Resources personnel so as to avoid violations of the FMLA, the ADA, Title VII, and/or Section 1981.

71. On information and belief, this lack of management, supervision, and training includes a lack of consequences for those who break the law under the FMLA, the ADA, Title VII, and/or Section 1981.

72. On information and belief, the Employer has a pattern or practice of violating the FMLA and the ADA when it comes to employees who have a disability and seek to take federally protected medical leave. In other words, the Employer has engaged in conduct similar to that described in this Complaint with respect to other employees who have a disability and seek to take FMLA leave.

## VI. STATEMENT OF CLAIMS

**FIRST CLAIM FOR RELIEF – INTERFERENCE IN VIOLATION OF THE FMLA**

73. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 72, inclusive, herein.

74. Plaintiff was an eligible employee under the FMLA.

75. Plaintiff had a serious health condition under the FMLA.

76. Defendants are subject to the requirements of the FMLA.

77. Plaintiff gave notice of her intention to take FMLA leave.

78. Defendants interfered with, restrained, and/or denied the exercise of or the attempt to exercise Plaintiff's rights under the FMLA.

79. Defendants' (a) failure to reinstate Plaintiff to her position; (b) discouragement of Plaintiff from using FMLA intermittent leave; (c) failure to promptly permit Plaintiff to take intermittent or reduced schedule FMLA leave when it was medically necessary due to the Plaintiff's serious health condition; (d) failure to provide Plaintiff with requisite FMLA notice(s); (e) manipulation of Plaintiff's work hours to avoid rights and obligations under the FMLA; and (f) refusal to respond to Plaintiff's FMLA-related inquiries caused Plaintiff to suffer harm and constitutes interference with, restraint of, and denial of the exercise of Plaintiff's FMLA rights.

80. By reason of Defendants' illegal interference with Plaintiff's rights under the FMLA, Plaintiff suffered prejudice, including but not limited to a reduced bank of intermittent FMLA hours, lost compensation and benefits, and loss of employment status in that Plaintiff's employment was ultimately terminated.

**SECOND CLAIM FOR RELIEF – RETALIATION IN VIOLATION OF THE FMLA**

81. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 80, inclusive, herein.

82. Plaintiff engaged in protected activity under the FMLA when in 2022 she requested FMLA leave, used federally protected FMLA leave, requested FMLA information, requested to return to work from FMLA leave, requested the accommodation of no overtime for a specific period, reported FMLA violations to a manager, the Employer, and/or the DOL, and exercised other FMLA rights.

83. Defendants engaged in retaliation against Plaintiff, including but not limited to refusing to promptly communicate with Plaintiff regarding her FMLA leave, refusing to timely

restore Plaintiff to her position, threatening to fire her, demoting her, taking responsibilities away from her, attempting to assign her to undesirable shifts, manipulating her time records to exhaust her intermittent FMLA leave, and constructively or actually terminating her employment.

84. Defendants terminated Plaintiff's employment in close proximity to her reports of retaliation under the FMLA. Those reports were made to both the United States Department of Labor and to Defendants' managers and Human Resources personnel.

85. Plaintiff alleges she was treated less favorably than employee(s) who did not request leave under the FMLA and/or was otherwise discriminated against under the FMLA.

**THIRD CLAIM FOR RELIEF – DISCRIMINATION IN VIOLATION OF THE ADA**

86. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 85, inclusive, herein.

87. Plaintiff is a qualified individual with a disability or disabilities under the ADA. Plaintiff has the impairments of anxiety and ADHD which substantially limit major life activities and the operation of major bodily functions.

88. At the time of her termination, Plaintiff was able to perform all essential functions of her job with or without reasonable accommodation.

89. Defendants failed to engage in an interactive process and individualized assessment regarding Plaintiff's disability or disabilities. Additionally, Defendants refused to provide a reasonable accommodation for her disability or disabilities.

90. Plaintiff suffered an adverse employment action because she was not restored to her position and was constructively and/or actually terminated from employment because of her disability or disabilities.

91. Plaintiff alleges that Defendants, unlawfully and discriminatorily failed to restore her to her position, and terminated or constructively terminated her employment on account of her disability or disabilities or, alternatively on account of her having a record of disability or disabilities, or alternatively on account of being regarded as having a disability or disabilities, and said action violated the provisions of the ADA.

**FOURTH CLAIM FOR RELIEF – RETALIATION IN VIOLATION OF THE ADA**

92. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 91, inclusive, herein.

93. Plaintiff alleges that she has been retaliated against and discharged from employment because of a disability or disabilities and for seeking to assert her rights under the ADA, or, alternatively, she has been retaliated against and discharged from employment because Defendants regarded her as having a disability or disabilities, or, alternatively, she has been retaliated against and discharged from employment for having a record of a disability or disabilities, in violation of the ADA.

**FIFTH CLAIM FOR RELIEF – RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII AND SECTION 1981**

94. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 93, inclusive, herein.

95. Plaintiff is a member of a protected class (African-American).

96. Plaintiff was qualified for her position.

97. Plaintiff was constructively and/or actually terminated from employment, which constituted an adverse employment action.

98. After her termination, Plaintiff's position was filled or her duties assumed by an individual or individuals outside the protected class.

99. Others outside the protected class were treated more favorably than Plaintiff.

100. Plaintiff was terminated because of or on the basis of race.

101. Alternatively, Plaintiff's race and/or her reports of concerns based on race were a motivating factor in the Employer's decision to terminate Plaintiff's employment.

**SIXTH CLAIM FOR RELIEF –RETALIATION IN VIOLATION OF TITLE VII AND SECTION 1981**

102. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 101, inclusive, herein.

103. Plaintiff alleges that she has been retaliated against and discharged from employment because of her race and because she opposed racial disparities involving African-American employees at work.

**VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

104. Prior to filing this action, Plaintiff timely filed two written charges with the EEOC within the appropriate number of days and has received right to sue letters.

105. Plaintiff has filed this action prior to the expiration of 90 days from the date of receiving her right to sue letters from the EEOC. Plaintiff has exhausted administrative remedies and prerequisites.

**VIII. DAMAGES**

106. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations of paragraphs 1 through 105, inclusive herein.

107. The unlawful employment practices complained of in the above paragraphs were intentional.

108. As a direct and proximate consequence of Defendants' unlawful conduct, policies, and practices, Plaintiff is entitled to the following under 29 U.S.C. § 2617: (1) wages, salary,

16

employment benefits, or other compensation; (2) actual monetary losses sustained by Plaintiff as a result of Defendants' violation(s) of the FMLA; (3) interest; (4) equitable relief; (5) attorney's fees and costs, including a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by Defendants; and (6) liquidated damages.

109. Plaintiff specifically pleads her right to liquidated damages under the FMLA. Defendants' violations of the FMLA were not committed in good faith.

110. As a direct and proximate consequence of Defendants' unlawful conduct, policies, and practices, Plaintiff is entitled to the following under the ADA, Title VII, and/or Section 1981: (1) back pay and front pay; (2) compensatory damages, including emotional distress damages; (3) punitive damages; (4) attorney's fees and costs; and (5) equitable relief. Under Section 1981, compensatory and punitive damages are not capped.

111. Plaintiff specifically pleads her right to punitive damages under the ADA, Title VII, and Section 1981 because Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to Plaintiff's federally protected rights.

## IX. JURY DEMAND

112. Plaintiff herein demands a trial by jury of all issues in this action that may be tried by jury.

## X. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment as follows:

a. For wages, salary, employment benefits, or other compensation denied or lost to Plaintiff;

b. For actual monetary losses sustained by Plaintiff;

c. For liquidated damages;

d. For compensatory damages, including physical and/or emotional damages, as well as any out-of-pocket expenses;

e. For back pay and front pay;

f. For punitive damages;

g. For attorney's fees and costs, including experts;

h. For pre- and post-judgment interest;

i. For injunctive and other equitable relief as provided by law, including but not limited to ordering appropriate training for Defendants' managers, employees, and Human Resources personnel regarding the FMLA, the ADA, Title VII, and/or Section 1981 and prohibiting Defendants from engaging in the unlawful employment practices set forth herein in the future;

j. For such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Robert B. Landry III*
Robert B. Landry, III  (#18998)
rlandry@landryfirm.com
**ROBERT B. LANDRY III, PLC**
5420 Corporate Boulevard, Suite 303
Baton Rouge, Louisiana  70808
Telephone:    (225) 349-7460
Facsimile:      (225) 349-7466

**COUNSEL FOR PLAINTIFF,
DARIANA JEFFERSON**